**BURSOR & FISHER, P.A.**
L. Timothy Fisher (State Bar No. 191626)
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile:  (925) 407-2700
E-mail: ltfisher@bursor.com

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CECELIA MOSHER-CLARK, individually and on behalf of all others similarly situated, | Case No. |
| Plaintiff, | **CLASS ACTION COMPLAINT** |
| v. | <u>**JURY TRIAL DEMANDED**</u> |
| GRAVITY DEFYER MEDICAL TECHNOLOGY CORPORATION, | |
| Defendant. | |

Plaintiff Cecelia Mosher-Clark ("Plaintiff") brings this action on behalf of herself and all others similarly situated against Defendant Gravity Defyer Medical Technology Corporation ("Defendant" or "GDMT") for the manufacture, marketing, and sale of shoes and sneakers sold under the brand name "Gravity Defyer" and using VersoShock technology (the "Footwear").[1]  Plaintiff makes the following allegations pursuant to the investigation of her counsel and based upon information and belief, except as to the allegations specifically pertaining to herself, which are based on personal knowledge.

## NATURE OF THE ACTION

1.      This is a class action on behalf of purchasers of Defendant's shoes and sneakers in the United States.  Since at least 2016, Defendant has advertised that the Footwear contains soles with VersoShock technology, which it claims are "clinically proven" to provide significant pain relief, including neck, knee, back, ankle, and foot pain.  In reality though, the Footwear is not "clinically proven" to provide pain relief, including relief for knee pain, back pain, ankle pain, and foot pain, nor does it provide pain relief at all.

2.      As part of its marketing approach, Defendant makes extensive "clinically shown" or "clinically roven" claims about the pain-relieving properties of its Footwear.  Defendant purports to back up its claims with a double-blind study conducted by the Olive View UCLA Medical Center.  This study bears significant flaws and is unreliable, however, and Defendant's use of this study to bolster its claims about the Footwear is highly misleading.

3.      The National Advertising Division of the Better Business Bureau has repeatedly demanded that Defendant reform its marketing of the Footwear.  Indeed, Defendant's deception has led the FTC to file a complaint (the "FTC Complaint") against Defendant for its unlawful conduct.[2]  Yet, Defendant continues to knowingly make these representations because consumers are willing

---

[1] The Footwear refers to all of Defendant's shoes or sneakers sold with Versoshock technology, as listed here: https://www.gravitydefyer.com/features/versoshock. These include but are not limited to the Gravity Defyer Pain Relief Women's G-Defy Mighty Walk Athletic Shoes.

[2] Complaint, *FTC v. Gravity Defyer*, File Number 1923117, https://www.ftc.gov/system/ files/ftc_gov/pdf/1923114GravityDefyerComplaintExhibitArev.pdf.

to pay more for products they believe have been specifically designed to and proven to provide pain relief for various conditions.

4. Had Defendant disclosed that the Footwear was not in fact "clinically proven" to provide extensive neck, back, knee, ankle, and foot pain relief, and that the Footwear did not in fact provide pain relief, Plaintiff and members of the Class would not have purchased the Footwear, or would have paid significantly less for the Footwear than they did.

5. Plaintiff and members of the Class were accordingly injured by the price premium they paid for the Footwear due to Defendant's misrepresentation that the Footwear was clinically proven to provide extensive neck, knee, back, ankle, and foot pain relief, when in fact, the Footwear does not provide such pain relief at all, let alone that it is not "clinically proven" to do so.

6. Plaintiff brings this action individually and on behalf of a class of all other similarly situated purchasers for a permanent injunction, and to recover damages and restitution for: (i) violation of California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq.* (the "UCL"); (ii) violation of California's Consumer Legal Remedies Act, Cal. Civ. Code §§ 1750, *et seq.* (the "CLRA"); (iii) violation of California's False Advertising Law, Cal. Bus. & Prof. Code §§ 17500, *et seq.* (the "FAL"); (iv) violation of the Song-Beverly Consumer Warranty Act, Cal. Civ. Code §§ 1790, *et seq*. and California Commercial Code § 2314; (v) violation of the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq.*; (vi) breach of express warranty under U.C.C. § 2-313; and (vii) breach of implied warranty under U.C.C. § 2-314.

## FACTUAL ALLEGATIONS COMMON TO ALL PARTIES

7. Since 2011, Defendant has manufactured, marketed, sold, and distributed footwear to consumers.

8. Defendant offers over 100 different styles of shoes for men and women, including athletic shoes, casual shoes, dress shoes, hiking shoes and boots, and sandals.

9. Defendant sells its Footwear to consumers throughout the United States, including to consumers in this District, through Defendant's website, www.gravitydefyer.com; its in-house call center; stores located in Los Angeles, Huntington Beach, Palm Desert, and Encino, CA; and retailers such as The Walking Company, Hammacher Schlemmer, and Shoe City.

10.    The Footwear sells for between $60, on the low end, for some sandals with Veroshock technology, and $235, on the high end, for work boots with Veroshock technology.[3]

11.    Defendant leans heavily on the promise that its Footwear will provide significant levels of pain relief.  Indeed, Defendant's homepage features the following graphic, which states that a "double-blind study by Olive View UCLA Medical Center"[4] has demonstrated that the Footwear is "clinically shown to relieve knee pain" by 85%, along with back pain by 91%, ankle pain by 92%, and foot pain by 75%.



12.    Defendant also made representations in other areas of its website that the Footwear "really relieve[s] pain" and is "clinically proven to relieve pain":

**FOOT PAIN**

Foot pain can strike anyone at any age. But foot pain is just a symptom. The term can equally describe muscle fatigue, a stress fracture, injury to the plantar region of the foot, and many other conditions. Shoes for foot pain are best if used as part of a doctor's treatment plan, working to speed recovery and prevent reinjury. Our shoes are designed to help. But you should always speak with your doctor about diagnosis, treatment options and ways to deal with your pain. **What other health conditions might benefit from diabetic neuropathy shoes?**

**Do Gravity Defyer shoes really relieve pain?** Yes. Our shock absorbing soles and numerous comfort innovations have made Gravity Defyer the international leader of pain-relief shoe technology. Using advanced materials and engineering our shoes absorb harmful shock, so you feel great! Try them yourself. **They are clinically proven to relieve pain.**

---

[3] https://www.gravitydefyer.com/features/versoshock?order=onlinecustomerprice:desc.

[4] The study was in fact commissioned by Gravity Defyer, and the Olive View UCLA Medical Center is a hospital system that is an entirely separate organization from the University of California, Los Angeles.

13.    Defendant made substantially similar or identical representations in other advertisements, such as magazines and Defendant's catalogue, each promising that the Footwear was "clinically proven" to provide knee, back, ankle, and foot pain, or telling consumers they could "live life pain free":



**An excerpt of a magazine ad that ran from approximately 2018 to 2020**

//

//

//

//

//

//

//



**The cover of Defendant's September 2019 Catalogue**

//

//

//

//

//

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



An excerpt of a magazine ad that ran from approximately 2017 to 2018

//
//
//
//
//
//



**A Facebook ad from January 2020**

14.     Based on the foregoing advertisements, among others, reasonable consumers such as Plaintiff were led to believe and did believe that the Footwear provided pain relief, including knee, back, ankle, and foot pain.

15.     These claims, however, are false.   Defendant's Footwear cannot, and does not, provide pain relief, let alone that the Footwear is "clinically proven" to do so.

16.     The "study" underpinning Defendant's claims is fatally deficient for numerous reasons, including:

(a)     The study was only designed to measure knee pain, which clearly calls into question claims that Gravity Defyer footwear relieves back, ankle, and foot pain.

(b)     The study included participants who stopped wearing the shoes, which obviously calls into question the results obtained.

(c)     The study relied solely on participants' self-reported pain levels, when it could have included range of motion or other functional tests of pain.

(d)     The study failed to control for other treatments that participants might have received (such as medications or physical therapy), which could have affected participants' pain levels.

(e)     The study was of insufficient size (52 participants) and duration (five weeks) and failed to ensure adequate double-blinding.

17. Thus, the study was not sufficient to determine the effects of wearing the Footwear on knee, back, ankle, or foot pain, or pain associated with the specific conditions claimed.

18. Indeed, the study was so deficient that both the FTC and the Better Business Bureau have demanded that GDMT cease entirely from claiming that its Footwear can provide pain relief, with the FTC having filed a complaint against Defendant.

19. This is not Defendant's first instance of falsely advertising goods to consumers based on spurious claims. In 2001, the FTC brought suit against Defendant's CEO, Alexander Elnekaveh, over claims involving a magnet that Mr. Elnekaveh sold to that public that he claimed would significantly reduce fuel consumption and harmful emissions. *See In re Esrim Ve Sheva Holding Corp.,* 132 F.T.C. 736 (2001). Mr. Elnekaveh settled with the FTC and became subject to an order that prevented him, directly or through a corporation, from using improper studies to misrepresent his goods and mislead the public.

20. Accordingly, because Mr. Elnekaveh is the CEO of GDMT, Defendant was aware of the order and had knowledge of what kinds of advertising statements would and would not be considered misleading to consumers.

21. Plaintiff, and all others similarly situated consumers, relied on GDMT's claims of pain relief in making their decision to purchase the Footwear. Put simply, Plaintiff and other consumers were induced into purchasing the Footwear on the reasonable but mistaken belief that the Footwear would provide significant pain relief, including knee pain, back pain, ankle pain, and foot pain. However, the Footwear does not provide such pain relief. But for GDMT's warranties and misrepresentations, Plaintiff and other similarly situated consumers would not have purchased the Footwear, or would not have paid as much as they did for the Footwear.

## PARTIES

22. Plaintiff Cecelia Mosher-Clark is a resident of Oakland, California and has an intent to remain there, and is therefore a citizen of California. On April 2, 2021, Plaintiff Mosher-Clark purchased a pair of Gravity Defyer Pain Relief Women's G-Defy Mighty Walk Athletic Shoes, one of the Footwear products, for $135 from Amazon.com. Prior to her purchase, Ms. Mosher-Clark reviewed Defendant's representations and warranties, which represented that the Footwear was

"clinically proven" to provide relief for knee pain, back pain, ankle pain, and foot pain. None of the advertising and marketing materials or labeling and packaging associated with the Footwear disclosed that the Footwear could not provide the aforementioned pain relief. Ms. Mosher-Clark relied on these representations and warranties in purchasing the Footwear, in that Ms. Mosher-Clark would not have purchased the Footwear or would have paid significantly less for it had she known the Footwear was not "clinically proven" to provide and in fact did not provide relief for knee pain, back pain, ankle pain, and foot pain. Accordingly, Ms. Mosher-Clark was injured by virtue of the price premium she paid for the Footwear as a result of Defendant's misrepresentations and omissions. Ms. Mosher-Clark did not experience any pain relief as a result of wearing the Footwear.

23.     Defendant Gravity Defyer Medical Technology Corporation is a California corporation with its principal place of business at 10643 Glenoaks Boulevard, Pacoima, CA 91331. Defendant transacts or has transacted business in this District and throughout the United States. At all times relevant to this Complaint, acting alone or in concert with others, GDMT has advertised, marketed, distributed, or sold footwear to consumers throughout the United States, including in this District.

## JURISTICTION AND VENUE

24.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because this is a class action where there are more than 100 members and the aggregate amount in controversy exceeds $5,000,000.00, exclusive of interest, fees, and costs, and at least one member of the putative Class is a citizen of a state different from Defendant.

25.     This Court has general personal jurisdiction over Defendant because Defendant is headquartered and maintains its principal place of business in California.

26.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Plaintiff purchased her Footwear and was exposed to Defendant's misrepresentations in this District.

## CLASS ALLEGATIONS

27.     Plaintiff brings this action pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(3) on behalf of a Class defined as all persons in the United States who purchased the Footwear during the applicable statute of limitations period (the "Class").

28.     Plaintiff also seeks to represent a subclass defined as all Class Members who purchased the Footwear in California during the applicable statute of limitations period (the "Subclass").

29.     The Class and Subclass shall be collectively referred to as the "Classes."

30.     Specifically excluded from the Classes are Defendant, Defendant's officers, directors, agents, trustees, parents, children, corporations, trusts, representatives, employees, principals, servants, partners, joint ventures, or entities controlled by Defendant, and its heirs, successors, assigns, or other persons or entities related to or affiliated with Defendant and/or Defendant's officers and/or directors, the judge assigned to this action, and any member of the judge's immediate family.

31.     Subject to additional information obtained through further investigation and discovery, the foregoing class definition may be expanded or narrowed by an amended complaint, or narrowed at class certification, including through the use of multi-state subclasses.

32.     **Numerosity.**  The members of the proposed Classes are so numerous that individual joinder is impracticable.  Upon information and belief, Plaintiff reasonably estimate that there are tens of thousands of individuals that are members of the proposed Classes.  Although the precise number of proposed members is unknown to Plaintiff, the true number of Class Members is known by Defendant.  More specifically, Defendant maintains databases that contain the name and address of each member of the Classes that purchased Footwear from its website or third-party retailers.  Thus, members may be identified and notified of the pendency of this action by first class mail, electronic mail, and/or published notice, as is customarily done in consumer class actions.

33.     **Commonality and Predominance.**  Common questions of law and fact exist as to all members of the Classes and predominate over any questions affecting only individual members of the Classes.  These common legal and factual questions include, but are not limited to, the following:

(a)     whether the marketing, labeling, and advertisements for the Footwear were false and misleading;

(b)     whether Defendant's conduct was unfair and/or deceptive; and

(c)     whether Plaintiff and the Classes sustained damages with respect to the claims asserted, and if so, the proper measure of their damages.

34. **Typicality.** Plaintiff's claims are typical of the claims of the other members of the Classes in that Plaintiff, like other members of the Classes, purchased the Footwear based on Defendant's fraudulent and misleading representations, and sustained damages as a result of Defendant's conduct.

35. **Adequacy of Representation.** Plaintiff will fairly and adequately protect the interests of members of the Classes. Plaintiff has retained counsel that is highly experienced in complex consumer class action litigation, and Plaintiff intends to vigorously prosecute this action on behalf of the Classes. Furthermore, Plaintiff has no interests that are antagonistic to those of the Classes.

36. **Superiority.** A class action is superior to all other available means for the fair and efficient adjudication of this controversy. The damages or other financial detriment suffered by members of the Classes is relatively small compared to the burden and expense of individualized litigation against Defendant. It would, thus, be virtually impossible for members of the Classes, on an individual basis, to obtain effective redress for the wrongs committed against them. Furthermore, even if members of the Classes could afford such individualized litigation, the court system could not. Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts. Individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised by this action. By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision by a single court, and presents no unusual management difficulties under the circumstances.

37. In the alternative, the Classes may also be certified because:

    (a) the prosecution of separate actions by individual members of the Classes would create a risk of inconsistent or varying adjudication with respect to individual members of the Classes that would establish incompatible standards of conduct for Defendant;

    (b) the prosecution of separate actions by individual members of the Classes would create a risk of adjudications with respect to them that would, as a practical matter, be dispositive of the interests of other members of the Classes not parties to the adjudications, or substantially impair or impede its ability to protect its interests; and/or

(c)    Defendant acted or refused to act on grounds generally applicable to the Classes, thereby making appropriate final declaratory and/or injunctive relief with respect to the members of the Classes as a whole.

## CAUSES OF ACTION

### COUNT I
### Violation of California's Unfair Competition Law,
### Cal. Bus. & Prof. Code §§ 17200, *et seq.*

38.    Plaintiff realleges and reincorporates by reference all paragraphs alleged above.

39.    Plaintiff brings this claim individually and on behalf of the Classes against Defendant.

40.    California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq.* ("UCL") prohibits "any unlawful, unfair, or fraudulent business act or practice." By committing the acts and practices alleged herein, Defendant has engaged in unlawful, unfair, and fraudulent business acts or practices in violation of the UCL.

41.    Defendant has violated the UCL's proscription against engaging in "unlawful" conduct as a result of its violations of the CLRA, Cal. Civ. Code § 1770(a)(5), (a)(7), and (a)(9), violations of California's Song-Beverly Act, and violations of California's False Advertising Law, in addition to breaches of warranty and violations of common law, as alleged below.

42.    Plaintiff and the Class Members reserve the right to allege other violations of law that constitute other unlawful business acts or practices.

43.    Defendant's acts and practices described above also violate the UCL's proscription against engaging in "fraudulent" conduct.

44.    As more fully described above, Defendant's misleading marketing, advertising, packaging, and labeling of the Footwear is likely to deceive and did deceive reasonable consumers.

45.    Defendant has also violated the UCL's proscription against engaging in "unfair" conduct in that Defendant's conduct is substantially injurious to consumers, offends public policy, and is immoral, unethical, oppressive, and unscrupulous, as the gravity of the conduct outweighs any alleged benefits attributable to such conduct.

46.    There is no benefit to consumers or competition from deceptively marketing material facts about the pain-relieving properties of the Footwear.

47.    Plaintiff and the other Class Members suffered a substantial injury by virtue of buying the Footwear that they would not have purchased absent Defendant's unlawful, fraudulent, and unfair marketing, advertising, packaging, and omission about the defective nature of the Footwear.

48.    Plaintiff and the other Class Members had no way of reasonably knowing that the Footwear they purchased were not as marketed, advertised, packaged, or labeled.  Thus, they could not have reasonably avoided the injury each of them suffered.

49.    Plaintiff and Class Members have no adequate remedy at law for this claim.  Plaintiff pleads her claim for equitable relief in the alternative, which inherently would necessitate a finding of no adequate remedy at law.  Alternatively, legal remedies available to Plaintiff are inadequate because they are not "equally prompt and certain and in other ways efficient" as equitable relief. *American Life Ins. Co. v. Stewart*, 300 U.S. 203, 214 (1937); see also *United States v. Bluitt*, 815 F. Supp. 1314, 1317 (N.D. Cal. Oct. 6, 1992) ("The mere existence' of a possible legal remedy is not sufficient to warrant denial of equitable relief."); *Quist v. Empire Water Co.*, 2014 Cal. 646, 643 (1928) ("The mere fact that there may be a remedy at law does not oust the jurisdiction of a court of equity. To have this effect, the remedy must also be speedy, adequate, and efficacious to the end in view … It must reach the whole mischief and secure the whole right of the party in a perfect manner at the present time and not in the future.").

50.    Furthermore:

(a)    To the extent damages are available here, damages are not equally certain as restitution because the standard that governs ordering restitution is different than the standard that governs damages. Hence, the Court may award restitution even if it determines that Plaintiff fails to sufficiently adduce evidence to support an award of damages.

(b)    Damages and restitution are not necessarily the same amount. Unlike damages, restitution is not limited to the amount of money defendant wrongfully acquired plus the legal rate of interest. Equitable relief, including restitution, entitles the plaintiff to recover all profits from the wrongdoing, even where the original funds taken have grown far greater than the legal rate of interest would recognize. Plaintiff seeks such relief here.

(c)    Legal claims for damages are not equally certain as restitution because claims under the UCL entail few elements.

(d)    A claimant otherwise entitled to a remedy for unjust enrichment, including a remedy originating in equity, need not demonstrate the inadequacy of available remedies at law." RESTATEMENT (THIRD) OF RESTITUTION § 4(2).

51.    Pursuant to California Business and Professional Code § 17203, Plaintiff and the Classes seek an order of this Court that includes, but is not limited to, an order requiring Defendant to (a) provide restitution to Plaintiff and the other Class Members; (b) disgorge all revenues obtained as a result of violations of the UCL; and (c) pay Plaintiff's and Class Members' attorneys' fees and costs.

## COUNT II
### Violation of California's Consumer Legal Remedies Act, Cal. Civ. Code §§ 1750, *et seq.*

52.    Plaintiff realleges and reincorporates by reference all paragraphs alleged above.

53.    Plaintiff brings this claim individually and on behalf of the Classes against Defendant.

54.    Plaintiff and Class Members are consumers within the meaning of Cal. Civ. Code § 1761(d).

55.    Cal. Civ. Code § 1770(a)(5) prohibits "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have or that a person has a sponsorship, approval, status, affiliation, or connection which she or she does not have."

56.    Cal. Civ. Code § 1770(a)(7) prohibits "[r]epresenting that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another."

57.    Cal. Civ. Code § 1770(a)(9) prohibits "advertising goods or services with intent not to sell them as advertised."

58.    Defendant violated Cal. Civ. Code §§ 1770(a)(5), (a)(7), and (a)(9) by intentionally and misleading representing the Footwear provided significant and clinically proven pain relief, including for knee pain, back pain, ankle pain, and foot pain, when in fact, the Footwear did not provide pain relief, much less "clinically proven" pain relief.

59.     Defendant's misrepresentations and omissions deceive and have a tendency and ability to deceive the general public.

60.     Defendant has exclusive or superior knowledge of the Footwear's actual pain-relieving properties, if any, which were not known to Plaintiff or Class Members.

61.     Plaintiff and Class Members have suffered harm as a result of these violations of the California Consumer Legal Remedies Act, Cal. Civ. Code §§ 1750, *et seq.* ("CLRA") because they have incurred charges and/or paid monies for the Footwear that they otherwise would not have incurred or paid had they known the Footwear did not provide clinically proven pain relief, including for knee pain, back pain, ankle pain, and foot pain, or any pain relief at all.  As a result, Plaintiff and the Classes are entitled to actual damages in an amount to be proven at trial, reasonable attorneys' fees and costs, declaratory relief, and punitive damages.

62.     Plaintiff and Class Members have no adequate remedy at law for this claim.  Plaintiff pleads her claim for equitable relief in the alternative, which inherently would necessitate a finding of no adequate remedy at law.  Alternatively, legal remedies available to Plaintiff are inadequate because they are not "equally prompt and certain and in other ways efficient" as equitable relief. *American Life Ins. Co. v. Stewart*, 300 U.S. 203, 214 (1937); see also *United States v. Bluitt*, 815 F. Supp. 1314, 1317 (N.D. Cal. Oct. 6, 1992) ("The mere existence' of a possible legal remedy is not sufficient to warrant denial of equitable relief."); *Quist v. Empire Water Co.*, 2014 Cal. 646, 643 (1928) ("The mere fact that there may be a remedy at law does not oust the jurisdiction of a court of equity. To have this effect, the remedy must also be speedy, adequate, and efficacious to the end in view … It must reach the whole mischief and secure the whole right of the party in a perfect manner at the present time and not in the future.").

63.     Furthermore:

    (a)     To the extent damages are available here, damages are not equally certain as restitution because the standard that governs ordering restitution is different than the standard that governs damages. Hence, the Court may award restitution even if it determines that Plaintiff fails to sufficiently adduce evidence to support an award of damages.

    (b)     Damages and restitution are not necessarily the same amount. Unlike damages, restitution is not limited to the amount of money

defendant wrongfully acquired plus the legal rate of interest. Equitable relief, including restitution, entitles the plaintiff to recover all profits from the wrongdoing, even where the original funds taken have grown far greater than the legal rate of interest would recognize. Plaintiff seeks such relief here.

(c) Legal claims for damages are not equally certain as restitution because claims under the CLRA entail few elements.

(d) A claimant otherwise entitled to a remedy for unjust enrichment, including a remedy originating in equity, need not demonstrate the inadequacy of available remedies at law." RESTATEMENT (THIRD) OF RESTITUTION § 4(2).

64. On August 17, 2022, at least thirty (30) days prior to the filing of this Complaint, Plaintiff's counsel sent Defendant a CLRA notice letter, which complies in all respects with Cal. Civ. Code § 1782(a). The letter was sent via certified mail, return receipt requested, advising Defendant that it was in violation of the CLRA and demanding that it cease and desist from such violations and make full restitution by refunding the monies received therefrom. The letter stated that it was sent on behalf of all other similarly situated purchasers. Accordingly, Plaintiff, individually, and on behalf of the proposed Classes, seeks monetary damages pursuant to Cal. Civ. Code § 1782(d). A true and correct copy of that letter is attached hereto as **Exhibit 1**.

**COUNT III**
**Violation of California's False Advertising Law,**
**Cal. Bus. & Prof. Code §§ 17500,** *et seq.*

65. Plaintiff realleges and reincorporates by reference all paragraphs alleged above.

66. Plaintiff brings this claim individually and on behalf of the Classes against Defendant.

67. Defendant's acts and practices, as described herein, have deceived and/or are likely to continue to deceive Class Members and the public. As described above, and throughout this Complaint, Defendant misrepresented the Footwear as being "clinically proven" to provide pain relief, including relief for knee pain, back pain, ankle pain, and foot pain. None of these representations are true.

68. By its actions, Defendant disseminated uniform advertising regarding the Footwear to and across California. The advertising was, by its very nature, unfair, deceptive, untrue, and misleading within the meaning of California's False Advertising Law, Cal. Bus. & Prof. Code

§§ 17500, *et seq.* (the "FAL"). Such advertisements were intended to and likely did deceive the consuming public for the reasons detailed herein.

69. The above-described false, misleading, and deceptive advertising Defendant disseminated continues to have a likelihood to deceive in that Defendant continues to misrepresent, without qualification, that the Footwear is not "clinically proven" to provide pain relief, including relief for knee pain, back pain, ankle pain, and foot pain.

70. In making and disseminating these statements, Defendant knew, or should have known, its advertisements were untrue and misleading in violation of California law. Defendant was aware of the faults in the study ostensibly supporting the claims, and its CEO has a history of making spurious marketing claims.

71. Plaintiff and other Class Members purchased the Footwear based on Defendant's representations that the Footwear was "clinically proven" to provide pain relief, including relief for knee pain, back pain, ankle pain, and foot pain.

72. The misrepresentations and non-disclosures by Defendant of the material facts described and detailed herein constitute false and misleading advertising and, therefore, constitutes a violation of the FAL.

73. As a result of Defendant's wrongful conduct, Plaintiff and Class Members lost money in an amount to be proven at trial. Plaintiff and Class Members are therefore entitled to restitution as appropriate for this cause of action.

74. Plaintiff and Class Members seek all monetary and non-monetary relief allowed by law, including restitution of all profits stemming from Defendant's unfair, unlawful, and fraudulent business practices; declaratory relief; reasonable attorneys' fees and costs under Cal. Code Civ. Proc. § 1021.5; and other appropriate equitable relief.

75. Plaintiff and Class Members have no adequate remedy at law for this claim. Plaintiff pleads her claim for equitable relief in the alternative, which inherently would necessitate a finding of no adequate remedy at law. Alternatively, legal remedies available to Plaintiff are inadequate because they are not "equally prompt and certain and in other ways efficient" as equitable relief. *American Life Ins. Co. v. Stewart*, 300 U.S. 203, 214 (1937); see also *United States v. Bluitt*, 815 F.

Supp. 1314, 1317 (N.D. Cal. Oct. 6, 1992) ("The mere existence' of a possible legal remedy is not sufficient to warrant denial of equitable relief."); *Quist v. Empire Water Co.*, 2014 Cal. 646, 643 (1928) ("The mere fact that there may be a remedy at law does not oust the jurisdiction of a court of equity. To have this effect, the remedy must also be speedy, adequate, and efficacious to the end in view … It must reach the whole mischief and secure the whole right of the party in a perfect manner at the present time and not in the future.").

76. Furthermore:

(a) To the extent damages are available here, damages are not equally certain as restitution because the standard that governs ordering restitution is different than the standard that governs damages. Hence, the Court may award restitution even if it determines that Plaintiff fails to sufficiently adduce evidence to support an award of damages.

(b) Damages and restitution are not necessarily the same amount. Unlike damages, restitution is not limited to the amount of money defendant wrongfully acquired plus the legal rate of interest. Equitable relief, including restitution, entitles the plaintiff to recover all profits from the wrongdoing, even where the original funds taken have grown far greater than the legal rate of interest would recognize. Plaintiff seeks such relief here.

(c) Legal claims for damages are not equally certain as restitution because claims under the FAL entail few elements.

(d) A claimant otherwise entitled to a remedy for unjust enrichment, including a remedy originating in equity, need not demonstrate the inadequacy of available remedies at law." RESTATEMENT (THIRD) OF RESTITUTION § 4(2).

<u>COUNT IV</u>
**Violation of the Song-Beverly Consumer Warranty Act,**
**Cal. Civ. Code §§ 1790, *et seq*. and Cal. Com. Code § 2314**

77. Plaintiff realleges and reincorporates by reference all paragraphs alleged above.

78. Plaintiff brings this claim individually and on behalf of the Subclass against Defendant.

79. Under the Song-Beverly Consumer Warranty Act, Cal. Civ. Code §§ 1790. *et seq.*, and Cal. Com. Code § 2314 (the "SB Act"), every sale of consumer goods in the State of California is accompanied by both a manufacturer's and retailer seller's implied warranty that the goods are merchantable, as defined in that Act. In addition, every sale of consumer goods in California is

accompanied by both a manufacturer's and retail seller's implied warranty of fitness when the manufacturer or retailer has reason to know that the goods as represented have a particular purpose and that the buyer is relying on the manufacturer's or retailer's skill or judgment to furnish suitable goods consistent with that represented purpose.

80. The Footwear is a "consumer good" within the meaning of Cal. Civ. Code § 1791(a).

81. Plaintiff and the Subclass Members who purchased the Footwear are "retail buyers" within the meaning of Cal. Civ. Code § 1791.

82. Defendant is in the business of manufacturing, assembling, and/or producing the Footwear and/or selling the Footwear to retail buyers, and therefore are a "manufacturer" and "seller" within the meaning of Cal. Civ. Code § 1791.

83. Defendant impliedly warranted to retail buyers that the Footwear could pass without objection in the trade under the contract description, was fit for the ordinary purpose for which the Footwear was used, and conformed to the promises of fact made on the labeling and marketing, because Defendant prominently and consistently advertised its Footwear as being "clinically proven" to provide pain relief, including relief for knee pain, back pain, ankle pain, and foot pain.

84. Defendant knew that Plaintiff and the Subclass Members would rely on Defendant's misrepresentations in making its purchasing decision because Defendant prominently advertised its Footwear to those experiencing various types of pain.

85. Plaintiff and Subclass Members purchased the Products in reliance upon Defendant's skill and judgment in properly packaging and labeling the Products.

86. The Footwear was not altered by Plaintiff or the Subclass Members.

87. The Footwear was defective at the time of sale when they were in the exclusive control of Defendant. The issue as described in this complaint was latent in the Footwear and not reasonably discoverable at the time of sale.

88. Defendant knew that the Footwear would be purchased and consumed without additional testing by Plaintiff and Subclass Members.

89.     As a direct and proximate cause of Defendant's breach of the SB Act, Plaintiff and Subclass Members have been injured and harmed because they would not have purchased the Footwear if they knew the Footwear was not "clinically proven" to provide pain relief, including relief for knee pain, back pain, ankle pain, and foot pain.

90.     Plaintiff and the Subclass seek compensatory damages, attorneys' fees, costs, and any other just and proper relief available under law.

**COUNT V**
**Violation of the Magnuson-Moss Warranty Act,**
**15 U.S.C. §§ 2301, *et seq.***

91.     Plaintiff realleges and reincorporates by reference all paragraphs alleged above.

92.     Plaintiff brings this claim individually and on behalf of the Classes against Defendant.

93.     The Footwear is a consumer product as defined in 15 U.S.C. § 2301(1).

94.     Plaintiff and the Classes are consumers as defined in 15 U.S.C. § 2301(3).

95.     Defendant is a supplier and warrantor as defined in 15 U.S.C. § 2301(4) and (5).

96.     In connection with the marketing and sale of the Footwear, Defendant expressly and impliedly warranted that the Footwear was "clinically proven" to provide pain relief, including relief for knee pain, back pain, ankle pain, and foot pain.

97.     The Footwear was not fit for these uses because the Footwear was not actually "clinically proven" to provide pain relief, including relief for knee pain, back pain, ankle pain, and foot pain, as described in the allegations above.

98.     By virtue of Defendant's breach of warranties, Defendant violated the statutory rights due Plaintiff and the Classes pursuant to the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq.*, thereby damaging Plaintiff and the Classes.

**COUNT VI**
**Breach of Express Warranty**

99.     Plaintiff realleges and reincorporates by reference all paragraphs alleged above.

100.    Plaintiff brings this claim individually and on behalf of the Classes against Defendant.

101.    This claim is brought pursuant to the laws of the State of California.

102.     As the designer, manufacturer, marketer, distributor, and/or seller of the Footwear, Defendant issued an express warranty by representing to consumers at the point of purchase that the Footwear was "clinically proven" to provide pain relief, including relief for knee pain, back pain, ankle pain, and foot pain.

103.     Defendant's representations were part of the description of the goods and the bargain upon which the goods were offered for sale and purchased by Plaintiff and members of the Classes.

104.     In fact, the claims that the Footwear was "clinically proven" to provide pain relief, including relief for knee pain, back pain, ankle pain, and foot pain, were false.  Accordingly, Defendant breached its express warranties regarding the Footwear.

105.     As a direct and proximate result of Defendant's breach of express warranty, Plaintiff and the Classes were injured because they: (1) paid money for Footwear that was not what Defendant represented; (2) were deprived of the benefit of the bargain because the Footwear was not "clinically proven" to provide pain relief, including relief for knee pain, back pain, ankle pain, and foot pain, as represented; and (3) were deprived of the benefit of the bargain because the Footwear they purchased had less value than if Defendant's representations about pain relief were truthful.

106.     Had Defendant not breached the express warranty by making the false representations alleged herein, Plaintiff and members of the Classes would not have purchased the Footwear or would not have paid as much as they did for them.

107.     On August 17, 2022, prior to filing this action, Defendant was served via certified mail with a pre-suit notice letter on behalf of Plaintiff that complied in all respects with U.C.C. §§ 2-313 and 2-607.  Plaintiff's counsel sent Defendant a letter advising that Defendant breached an express warranty and demanded that Defendant cease and desist from such breaches and make full restitution by refunding the monies received therefrom.  A true and correct copy of Plaintiff's counsel's letter is attached hereto as **Exhibit 1**.

**COUNT VII**
**Breach of Implied Warranty**

108.     Plaintiff realleges and reincorporates by reference all paragraphs alleged above.

109.     Plaintiff brings this claim individually and on behalf of the Classes against Defendant.

110. This claim is brought pursuant to the laws of the State of California.

111. Defendant, as the designer, manufacturer, marketer, distributor, and/or seller of the Footwear, impliedly warranted that the Footwear was "clinically proven" to provide pain relief, including relief for knee pain, back pain, ankle pain, and foot pain.

112. Defendant breached this warranty implied in the contract for the sale of the Footwear because the Footwear could not pass without objection in the trade under the contract description, the Footwear was not adequately contained, packaged, and labeled as per Defendant's contract with Plaintiff and members of the Classes, and the Footwear does not conform to the promise or affirmations of fact made on the marketing and packaging for the Footwear that the Footwear was "clinically proven" to provide pain relief, including relief for knee pain, back pain, ankle pain, and foot pain. U.C.C. §§ 2-313(2)(a), (e), (f). As a result, Plaintiff and members of the Classes did not receive the goods as impliedly warranted by Defendant to be merchantable.

113. Plaintiff and members of the Classes purchased the Footwear in reliance upon Defendant's skill and judgment and the implied warranties of fitness for the purpose.

114. The Footwear was not altered by Plaintiff or members of the Classes.

115. The Footwear was defective when it left the exclusive control of Defendant.

116. Defendant knew that the Footwear would be purchased and used without additional testing by Plaintiff and members of the Classes.

117. Plaintiff and members of the Classes did not receive the goods as warranted.

118. As a direct and proximate cause of Defendant's breach of the implied warranty, Plaintiff and members of the Classes have been injured and harmed because: (a) they would not have purchased the Footwear on the same terms if they knew that the Product was not "clinically proven" to provide pain relief, including relief for knee pain, back pain, ankle pain, and foot pain; and (b) the Footwear does not have the characteristics, uses, or benefits as promised by Defendant.

119. On August 17, 2022, prior to filing this action, Defendant was served with pre-suit notice letters on behalf of Plaintiff that complied in all respects with U.C.C. §§ 2-313 and 2-607. Plaintiff's counsel sent Defendant a letter advising Defendant that it breached an implied warranty and demanded that Defendant cease and desist from such breaches and make full restitution by

refunding the monies received therefrom.  A true and correct copy of Plaintiff's counsel's letter is attached hereto as **Exhibit 1**.

**COUNT VIII**
**Fraud**

120.  Plaintiff realleges and reincorporates by reference all paragraphs alleged above.

121.  Plaintiff brings this claim individually and on behalf of the members of the Classes against Defendant.

122.  As discussed above, Defendant provided Plaintiff and members of the Classes with false or misleading material information about the Footwear.  Specifically, Defendant falsely claimed that the Footwear was clinically proven to relief pain when the Footwear was not clinically proven to relieve pain and in fact does not relieve pain at all.

123.  These misrepresentations were made with knowledge of their falsehood.  Defendant's CEO has previously been the subject of an FTC action before for making false claims.  Additionally, Defendant is currently the subject of an FTC action regarding the same allegations that appear in the complaint, yet Defendant has continued to making false representations about the Footwear.

124.  The misrepresentations made by Defendant, upon which Plaintiff and members of the Classes reasonably and justifiably relied, were intended to induce and actually induced Plaintiff and members of the Classes to purchase the Footwear.

125.    The fraudulent actions of Defendant caused damage to Plaintiff and members of the Classes, who are entitled to actual losses and damages in a sum to be determined at trial, including punitive damages and other legal and equitable relief as a result.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of all other similarly situated, seeks judgment against Defendant as follows:

(a)    For an order certifying the Classes under Fed. R. Civ. P. 23, naming Plaintiff as representative of the Classes, and Plaintiff's attorneys as Class Counsel to represent the Classes;

(b)    For an order declaring that the Defendant's conduct violates the statutes and causes of action referenced herein;

(c)     For an order finding in favor of Plaintiff and the Classes on all counts
asserted herein;

(d)     For compensatory, statutory, and punitive damages in amounts to the
determined by the Court and/or jury;

(e)     For pre-judgment interest on all amounts awarded;

(f)     For an order of restitution, disgorgement, and all other forms of monetary
relief;

(g)     For injunctive relief as pleaded or as the Court may deem proper; and

(h)     For an order awarding Plaintiff and the Classes their reasonable attorneys'
fees and expenses and costs of suit.

## <u>JURY TRIAL DEMANDED</u>

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury on all
claims so triable.

Dated: September 16, 2022         Respectfully submitted,

**BURSOR & FISHER, P.A**.

By:    */s/ L. Timothy Fisher*

L. Timothy Fisher (State Bar No. 191626)
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-mail: ltfisher@bursor.com

*Attorney for Plaintiff*

**CLRA Venue Declaration Pursuant to California Civil Code Section 1780(d)**

I, L. Timothy Fisher, declare as follows:

     1.     I am an attorney at law licensed to practice in the State of California and a member of the bar of this Court.  I am a partner at Bursor & Fisher, P.A., counsel of record for Plaintiff in this action.  I have personal knowledge of the facts set forth in this declaration and, if called as a witness, I could and would competently testify thereto under oath.

     2.     The Complaint filed in this action is filed in the proper place for trial under Civil Code Section 1780(d) in that a substantial portion of the events alleged in the Complaint occurred in the Northern District of California.

     I declare under the penalty of perjury under the laws of the State of California and the United States that the foregoing is true and correct.  Executed in Walnut Creek, California this 16th day of September, 2022.

*/s/ L. Timothy Fisher*
L. Timothy Fisher

**EXHIBIT 1**

# BURSOR & FISHER
### P.A.

**1990 NORTH CALIFORNIA BLVD.**
**SUITE 940**
**WALNUT CREEK, CA 94596**
**www.bursor.com**

**L. TIMOTHY FISHER**
Tel: **925.300.4455**
Fax: **925.407.2700**
**ltfisher@bursor.com**

August 17, 2022

*__Via Certified Mail – Return Receipt Requested__*

Gravity Defyer Corporation
10643 Glenoaks Boulevard
Pacoima, CA 91331

Re:   *Notice and Demand Letter Pursuant to U.C.C. §§ 2-313, 2-314, 2-607;*
      *California Civil Code § 1782; and all other applicable state and local laws*

To Whom It May Concern:

This letter serves as a preliminary notice and demand for corrective action by Gravity Defyer Corporation ("Gravity Defyer" or "You"), pursuant to U.C.C. § 2-607(3)(a) concerning breaches of express and implied warranties on behalf our client Cecelia Mosher-Clark and a class of all similarly situated purchasers (the "Class") of Gravity Defyer footwear. This letter also serves as a notice of violation of California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq.* (the "UCL"); California's Consumer Legal Remedies Act, Cal. Civ. Code §§ 1750, *et seq.* (the "CLRA"); California's False Advertising Law, Cal. Bus. & Prof. Code §§ 17500, *et seq.* (the "FAL"), the Song-Beverly Consumer Warranty Act, Cal. Civ. Code §§ 1790, *et seq.* and California Commercial Code § 2314; the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq.*; and all other applicable state and federal laws. Should we not receive a response to our offer of resolution set forth below, this letter provides statutory notice of our intent to file a class action lawsuit.

Our client purchased a pair of Gravity Defyer Pain Relief Women's G-Defy Mighty Walk Athletic Shoes for $135 from Amazon.com while residing in California. You repeatedly represented and warranted these shoes, as well as all others manufactured, distributed, and sold by you, would provide extensive pain relief to the knees, back, ankles, and feet.[1] Our client understood your representations to mean that Your footwear had the capability to provide significant pain relief in the above-referenced portions of her body, and agreed to pay what she did for the shoes on the basis of these representations. However, the FTC has found that the studies upon which you based your claims of pain relief were significantly flawed, and therefore, Your statements about your entire product line's pain relief capabilities were false and misleading.[2]

---

[1] https://tinyurl.com/4fk6pmju

[2] https://www.ftc.gov/system/files/ftc_gov/pdf/1923114GravityDefyerComplaintrev.pdf

Specifically, the FTC found (1) You "continue to make deceptive pain relief claims on [Your] website gravity defyer.com"; (2) You have engaged in unlawful acts and practices repeatedly over a period of approximately 10 years; (3) You continue to disseminate [Your] deceptive advertising despite repeated recommendations from the National Advertising Division of BBB"; and (4) that You "remain in the business of marketing and selling footwear and maintain the means, ability, and incentive to continue [Your] unlawful conduct."[3]

Your conduct misled and deceived our client and all others similarly situated. Had You disclosed that your footwear was not actually clinically proven to provide pain relief, our client and all others similarly situated would not have purchased your footwear or would have paid less for it than they did. Accordingly, you violated the UCL, CLRA, and FAL, and breached Your express and implied warranties to consumers. As a result of Your violations of these laws, our client and all others similarly situated were sustained injury.

As to California in particular, you have violated the California Consumers Legal Remedies Act (1) representing that Your footwear had certain characteristics that they did not have, in violation of Cal. Civ. Code § 1770(5); (2) representing that Your footwear was of a certain standard or quality when it was not, in violation of Cal. Civ. Code § 1770(7); and (3) advertising Your footwear with an intent not to sell them as advertised, in violation of Cal. Civ. Code § 1770(9). As a result of Your violation of the California Consumers Legal Remedies Act, our client sustained injury.

On behalf of our client and the putative Class, we hereby demand that You immediately (1) cease and desist from continuing to represent Your footwear as clinically proven to provide pain relief and (2) make full restitution to all purchasers who purchased Your footwear.

We also demand that You preserve all documents and other evidence which refers or relates to any of the above-described practices including, but not limited to, the following:

1.  All documents concerning the manufacturing, labeling, and packaging processes for Gravity Defyer footwear;

2.  All documents concerning the pricing, advertising, marketing, and/or sale of the Gravity Defyer footwear;

3.  All documents concerning Gravity Defyer's communications with the Federal Trade Commission and other federal and state regulators regarding representations about pain relief;

4.  All documents concerning any research done by Gravity Defyer or any third party on behalf of Gravity Defyer regarding the representations about pain relief, including but not limited to the value of the representations and the effect of the representations on sales and consumer perception;

---

[3] *Id.* at 16-17.

5.      All documents concerning how Gravity Defyer determines that its footwear provides pain relief; and

6.      All documents concerning the total sales of Your footwear and total revenue and profits derived from sales of the Your footwear.

If You contend that any statement in this letter is inaccurate in any respect, please provide us with Your contentions and supporting documents immediately upon receipt of this letter.

Please contact me right away if You wish to discuss an appropriate way to remedy this matter.  If I do not hear from You promptly, I will take that as an indication that You are not interested in doing so.

Very truly yours,

L. Timothy Fisher